April L. Hollingsworth (9391)
Katie Panzer (16919)
Whitney Nelson (19031)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: 801-415-9909
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com
whitney@aprilhollingsworthlaw.com

Nicolas C. Wilde (15768)
**Law Office of Nicolas C. Wilde
LLC**
2564 Washington Blvd. Suite 202
Ogden, Utah 84401
801-949-3088
nick@ncwildelaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Ricardo Velez <br><br> Plaintiff, <br><br> v. <br><br> Metropolitan Water District of Salt Lake & Sandy, a political subdivision <br><br> Defendants | **COMPLAINT** <br><br><br> Case No. <br><br><br> Jury Trial Demanded |

Ricardo Velez ("Mr. Velez") alleges as follows against Defendant (1) the Metropolitan

Water District of Salt Lake & Sandy ("the District").

### I.      PARTIES

1. Mr. Velez is a natural person who resides and is domiciled in Utah.

2. The District is a "political subdivision" under the Utah Protection of Public Employees Act.

3. At all material times, the District employed more than 15 persons.

1

## II.    JURISDICTION AND VENUE

4.  This civil action (the "Action") arises under the laws of the United States, including 42 U.S.C. §2000e; 29 U.S.C. § 621; and 42 U.S.C. § 1981. The Court therefore has jurisdiction over the subject matter of the federal law claims in the Action pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States of America. The Court has supplemental jurisdiction over the Utah state law claim for relief pursuant to 28 U.S.C. § 1367.

5.  The Court can, and should, exercise personal jurisdiction over the District because it has sufficient contacts with Utah.

6.  Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

7.  Mr. Velez filed a Charge of Discrimination with the Utah Labor Commission on or about May 8, 2023, alleging discrimination on the basis of his age, race, and national origin. He also alleged that he had been subjected to retaliation. He received a Notice of Right to Sue on January 12, 2024. Attached as Exhibit 1.

## III.    FACTUAL BACKGROUND

8.  The District is a government entity established in 1935 by the Salt Lake City Commission.

9.  The District is citizen-administered through a Board of Trustees comprised of seven board members.

10. On information and belief, the majority, if not all, of the current Board of Trustees are Anglo.

11. According to the organizational chart for fiscal year 2024, the current General Manager of the District is Annalee Munsey.

12. Munsey assumed the role of General Manager in June of 2023.

2

13. The General Manager before Munsey was Mike Devries.

14. Below Munsey are Wayne Winsor, the Assistant General Manager/Chief Administrative Officer and Gordon Cook, the Assistant General Manager/Chief Operating Officer.

15. Below Cook is Steve Slack, the "Maintenance Manager."

16. During the times relevant to this Complaint, Slack was Mr. Velez's direct supervisor.

17. According to the organizational chart for fiscal year 2024, Ky Neves is the District's "Warehouse Administrator."

18. According to the organizational chart for fiscal year 2024, Mike Carter is the District's "Fleet Administrator."

19. According to the organizational chart for fiscal year 2024, Blake Bowles is the District's "Maintenace Lead"—a position above Maintenance Technician III.

20. Mr. Velez is Puerto Rican and Hispanic.

21. The District hired Mr. Velez on March 28, 2005.

22. Sometime in 2016, Mr. Velez was promoted to Maintenance Technician III.

23. On information and belief, on or around July 2, 2020, Cook conducted a performance appraisal of Mr. Velez. In this review, Cook wrote that "Ricky is the unofficial Maintenance lead man at the POMWTP. He takes charge of all the activities while **training fellow employees** on all the different tasks. Ricky knows this treatment plant inside and out. He is very dependable."

24. On or around March 8, 2021, Ky Neves walked into the maintenance office smelling of alcohol. Mr. Velez reported him to Cook, who sent Neves home.

25. On or around April 19, 2021, Mr. Velez noticed that Neves again smelled like alcohol. When Wayne Winsor showed up, Neves was driving a backhoe. Winsor talked to Neves about his alcohol use but did not discipline him.

26. On or around May 25, 2021, Mr. Velez again noticed Neves smelled like alcohol.

27. On or around June 26, 2021, Mr. Velez asked Cook about what opportunities for promotion were available to him at the District. Notwithstanding Cook having recognized in July of 2020 that Mr. Velez (1) trains fellow employees "on all the different tasks" and (2) "knows this treatment plant  inside and out," Cook told Mr. Velez that there would not be opportunities for him because "we are not the future of the District because of our age and the time we have left at the District."

28. During this conversation, Mr. Velez also mentioned that Neves smelled like alcohol again the prior week. Cook responded that his "hands are tied" regarding the alcohol problem, implying that he could or would not discipline Neves for his repeated use of alcohol at work.

29. On July 1, 2021, Sonya Shepherd, the District's Human Resources Program Manager, announced that Mike Carter had been promoted to the position of Fleet Administrator and Blake Bowles had been promoted to Maintenance Tech III.

30. These positions were not posted or announced, Cook simply promoted Mr. Carter, depriving Mr. Velez of any opportunity to apply.

31. On information and belief, there was no interview process for the position of Fleet Administrator. Rather, Cook told Mr. Velez that the position would go to Mike Carter no matter what.

32. In July of 2021, Mr. Velez sent Mike Devries—the then-General Manager of the District—a "Formal Complaint." In this letter he mentioned that he felt he had been "unlawfully discriminated [against] based on certain circumstances like [his] race and age."

33. On July 9, 2021, Mr. Velez talked to Blake Burch. Burch said that when Lynn Coon "was here" that Neves smelled like alcohol. Burch also said that he and Jonathan Peters ("JP") found a bottle of alcohol in a District truck that Neves was driving. Burch and JP were told that they would have to write declarations about it but both decided not to.

34. A meeting between Mr. Velez, Shepherd, and Munsey was scheduled for July 21, 2021, at 7:30 a.m. in order to discuss Mr. Velez's complaint of discrimination.

35. During that meeting, Mr. Velez told Shepherd and Munsey about Cook's comment that Mr. Velez is not the future of the District because of his age. Mr. Velez also told Sheperd and Munsey about Neves repeatedly smelling like alcohol at work; about the bottle being found in his truck; and that Burch, Jon Jeffries, and Lynn Coon had also smelled alcohol on Neves.

36. On July 26, 2021, Cook met with Munsey and Shepherd. During this meeting, Cook admitted that he made the comment to Mr. Velez that they were not the future of the District because of their age.

37. On July 27, 2021, Shepherd and Munsey spoke with Blake Burch. During this meeting, Burch told them that during the pandemic, Burch started smelling alcohol on Neves' breath. He also told them that "[t]here had been a couple of time[s] when they were eating dinner that Ky threw up." He also stated that he "thinks Mitch asked Ky about it and he thinks Ky did admit to drinking maybe before coming to work." "Jonathan Peters (JP) also smelled alcohol on Ky while working the night shifts with them." Blake also said, "he and JP found [sometime around August of 2020] alcohol in the District vehicle Ky was driving."

38. Burch also stated that he "is hoping no [one] gets fired as a result of [the] investigation."

39. Despite multiple employees reporting that Neves was repeatedly very likely under the influence of alcohol while at work—and despite multiple employees informing management that Neves had alcohol with him in a District vehicle—Neves was not disciplined, much less terminated. Indeed, despite multiple credible reports of his drunkenness, he is listed as the "Warehouse Administrator" under the District's 2024 organizational chart.

40. On or around September 15, 2021, Sonya Shepherd prepared an Interoffice Memorandum related to Mr. Velez's claim of race and age discrimination, safety concerns related to Neves, and promotion process grievance.

41. On or around December 19, 2022, a maintenance lead position with the District became available.

42. On January 4, 2023, both Mr. Velez and Bowles applied for the Maintenance Lead position.

43. By this point in time, Mr. Velez had been a District employee for approximately 17 years and 9 months.

44. In contrast, Bowles had been a District employee for no more than five years.

45. Mr. Velez had more seniority and more experience than Bowles and was overall, more qualified for the Maintenance Lead position.

46. At the time that Bowles applied, he was in his 30's.

47. On information and belief, the District's decision to hire Bowles over Mr. Velez was based on Velez's ethnicity, age, and the fact that he had made a complaint in 2021.

48. On January 13, 2023, Mr. Velez sent a letter to Mike DeVries, informing him that he had "been discriminated against for [his] race and age . . . ." In that letter, he wrote: "The unfair treatment and false promises of promotion in the past, the way how it is so easy overriding

me for a promotion for no good reason when I do have the experience and qualities to achieve it."

49. Sometime after February 2, 2023, Slack mockingly told Mr. Velez in Spanish "Hola, amigo. Como Estas?" This was not the first time Slack bullied or diminished Mr.Velez. Slack had also remarked: "if you need help translating to English anything."

50. On information and belief, notwithstanding any denials by Slack, Slack's true intention was to offend Ricardo and highlight the fact that in the District's work setting, Mr. Velez is the "other" because he is not Anglo like the vast majority, if not all, of the District's employees in leadership positions. In fact, Mr. Velez is the only Hispanic employee in the maintenance department.

51. On March 3, 2023, Mr. Velez sent a letter to Tom Godfrey, Chair of the Board of Trustees. In that letter, he wrote: "I submitted a formal complaint to the general manager in 2021 because I was discriminated against for my age and race. After an extended conversation at his office, he assured me that it wouldn't happen again, and he apologized for making me feel discriminated against. In January of 2023, [it] happened again, I sent him a certified letter requesting a meeting, but he never acknowledged my intent to explain to him the circumstances . . . ." Mr. Velez also wrote that he "stepped forward and file[d] a formal complaint at the Labor Commission Department."

52. On March 17, 2023, Godfrey responded to Mr. Velez's letter. Relevant here, Godfrey wrote that "the District and its attorney believed it would be best for everyone involved to allow the process to continue through UALD's investigation and mediation."

7

53. On May 8, 2023, Mr. Velez filed a charge of discrimination with the Utah Antidiscrimination & Labor Division ("UALD") alleging discrimination on the basis of age, race, and national origin..

54. In June of 2023, Munsey assumed her role as General Manager of the District.

55. On information and belief, on or arouund July 1, 2023, the District implemented an Employee Manual that made clear that office equipment and supplies are the property of the District and are intended only for use in conducting the District's business.

56. On August 1, 2023, Cook and Neves were photographed at work carrying a hand rail that Cook had fabricated on District property, using District equipment.

57. On September 28, 2023, Mike Carter and Blake Burch were photographed at work carrying the hand rail outside the building to paint it. Cook had fabricated the hand rail.

58. On October 3, 2023, Cook's personal "RZR," an off-road vehicle, was photographed being stored in District property.

59. On November 9, 2023, the UALD issued a "no cause" determination on Mr. Velez's Charge of Discrimination, finding for the District. A copy was provided to the District.

60. On December 19, 2023, Mr. Velez submitted comments to a performance evaluation and wrote, in relevant part, that he had never made any of his co-workers help him during company time with personal projects.

61. On December 29, 2023, Munsey sent an email to Cook and others asking about Mr. Velez's comment about making co-workers help with personal projects.

62. On or around January 9, 2024, Mr. Velez met with Munsey and Shepherd and presented them with a letter that provided, in relevant part, that Blake Burch said that Cook told him that

"everything needed to stop," because Mr. Velez had gone to Munsey about his personal use of District equipment.

63. Because Munsey had requested from Mr. Velez an explanation about his answers on his work performance, Mr. Velez wrote a letter for the meeting and also provided photos of "only (3) different occasions where personal projects were conducted during business hours inside the District Maintenance Department," and wrote that he "only captured three of the multiple times that had happened in the last few months." He explained that he decided to take pictures after he saw Slack taking pictures of him.

64. On or around January 8, 2024, Munsey met with Cook and Munsey showed Cook the photos of Cook's personal projects.

65. Cook said that he received permission from Mike DeVries to allow employees to use District facilities for personal projects.

66. Cook told Steve Slack "that for the time being to not allow employees to use District equipment/facilities."

67. Cook admitted to changing his oil or doing other "small tasks" during the work day.

68. Cook admitted that the photo dated August 1, 2023, was of him and Neves carrying a hand rail that he had fabricated.

69. Cook admitted that the photo dated September 27, 2023, showed Mike Carter and Blake Burch carrying a railing that he had fabricated.

70. Cook admitted that the photo dated October 3, 2023, was of his RZR that he had parked in the District's maintenance bay overnight.

71. On or around January 9, 2024, Munsey and Shepherd met with Blake Burch in Munsey's office. Burch denied being worried about being fired himself but expressed concern that he what he said could get someone fired.

72. On January 10, 2024, the U.S. Equal Employment Opportunity Commission issued Mr. Velez a Notice of Right to Sue Letter. A copy was also mailed to the District.

73. On January 15, 2024, after speaking with Burch and Cook *and without following up with Mr. Velez*, Munsey determined that Mr. Velez had violated the Employee Manual by engaging in "dishonesty," ostensibly about whether Burch had told him Cook said, "everything needs to stop."

74. On or around January 16, 2024, Munsey drafted a letter concluding that Mr. Velez had fabricated the statement made by Burch. Based on Velez's alleged dishonesty "through fabricating statements [he] falsely attributed to a coworker," the Munsey terminated Mr. Velez, effective January 16, 2024.

75. The District has a whistleblower policy.

76. Under that policy, "any employee who believes he . . . is being retaliated against . . . in violation of [the] policy or" the Utah Protection of Public Employees Act "must file a complaint/grievance with the independent personnel board, by delivering the complaint/grievance to the HR Program Manager within 10 calendar days of the adverse action that was taken."

77. "The independent personnel board consists of the Executive Committee or their designee."

78. On January 23, 2024, Mr. Velez timely filed a grievance.

79. On February 23, 2024, a hearing was held concerning Mr. Velez's grievance.

10

80. The independent personnel board was made up of three members of the District's Board of Trustees: Tom Godfrey, Board of Trustees Chair; John Kirkham, Vice Chair; and Pat Comarell, Secretary.

81. On March 4, 2024, the independent personnel board issued a written ruling denying Mr. Velez's grievance.

## IV.    CLAIMS FOR RELIEF

### FIRST CLAIM

### Violation of the Utah Protection of Public Employees Act (as to the District)

82. Mr. Velez incorporates and realleges all paragraphs as though fully set forth herein.

83. The District is a political subdivision under the Utah Protection of Public Employees Act ("UPPEA").

84. Mr. Velez engaged in protected activity when he complained in good faith that Cook used District property, equipment, time, and resources for personal projects.

85. The District violated the UPPEA when it retaliated against Mr. Velez after he complained about Cook's misuse of District property, equipment, time, and resources.

86. As the General Manager, Munsey has authority over Cook.

87. Mr. Velez acted in good faith when he engaged in a protected activity of reporting waste within the District. Specifically, Mr. Velez is entitled to the presumption of good faith under the UPPEA because he communicated the waste and misuse of District resources in writing to Munsey, a person with authority over Cook.

88. The District knew about Mr. Velez engaging in the protected activity.

89. The District's retaliation occurred because of Mr. Velez's protected activity. In fact, Munsey specifically wrote in Mr. Velez's termination letter that he was being terminated for his complaint, although she characterized it as Mr. Velez having "fabricated" evidence.

90. The District's adverse action was not justified.

91. The District's July 1, 2023, Employee Manual does not contain *any* provision authorizing Cook's actions.

92. To the contrary, the Employee Manual appears to only allow the District's equipment and supplies to be used for conducting the District's business.

93. Cook telling Slack "that for the time being, to not allow employees to use District equipment/facilities" is itself evidence that the District's official policy did not permit Cook to use District resources for his personal projects.

94. The District's conclusion that Mr. Velez fabricated statements made by Burch (1) accepts Burch's version wholesale and rejects Ricardo's while simultaneously (2) overlooking the photographic evidence supporting Ricardo's claims and (3) overlooking Burch's motive to lie—not wanting to get Cook in trouble. Here, the District simply accepted Burch's version of events while rejecting Mr. Velez's. Further, after speaking to Burch and Cook, the District never spoke to Mr. Velez to hear his response to Cook and Burch's statements.

95. Inconsistencies and implausibilities in the District's January 16, 2024, termination letter demonstrate the District's reason for terminating Mr. Velez is pretext.

96. However, even if Mr. Velez did "fabricate" Burch's statement, other employees were not terminated for engaging in similar—and often much more serious—"misconduct" than allegedly being dishonest about another employee's statement.

97. The District's Employee Manual provides: "[t]he District intends to provide a safe, alcohol-free and drug-free workplace. The District prohibits the unauthorized . . . use . . . or possession of . . . alcohol on District property (including all District structures, facilities, lands, and work-related locations, District automobiles, trucks, and any other vehicles used for District purposes) or any time an employee is representing the District on District business."

98. Neves repeated drunken episodes at work—including operating heavy machinery and District-owned vehicles—is arguably a significantly more serious violation of the District's policies. Neves was never terminated, even after repeated complaints from his coworkers, and to Mr. Velez's knowledge, Neves was not disciplined either.

99. Ricardo has been injured as a result of the District's actions, and is entitled to recover his economic and non-economic damages, as well as his attorneys' fees and costs in this action.

## SECOND CLAIM
### Discrimination on the Basis of Age in Violation of ADEAA (as to the District)

100.    Plaintiff incorporates and realleges all paragraphs as though fully set forth herein.

101.    The District discriminated against Mr. Velez on the basis of age when it promoted Bowels (a less qualified individual who was in his 30's) rather than Mr. Velez for the position of Maintenance Lead.

102.    The discriminatory conduct caused Mr. Velez damages that he is entitled to recover, including but not limited to lost wages.

103.    Mr. Velez also suffered emotional distress, pain, and suffering due to the District's intentional conduct; therefore he is entitled to compensatory damages in an amount to be proven at trial.

104. The District acted with malice or reckless disregard of Mr. Velez's federally protected rights to work in an environment that is not pervaded with discrimination, therefore; the District is liable for punitive damages.

105. Specifically, Cook specifically told Mr. Velez that he did not have any opportunities for promotion because of his age.

106. Mr. Velez complained of age discrimination multiple times but the District failed to take adequate preventative measure to rectify the discrimination.

107. Mr. Velez is entitled to recover all economic and non-economic damages, including his attorneys' fees and costs of this action.

## THIRD CLAIM
### Retaliation on the Basis of Protected Activity in Violation of the ADEAA (as to the District)

108. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

109. Mr. Velez opposed age discrimination when he filed a charge of discrimination in May of 2023 and when he complained in July of 2021 of age discrimination.

110. Because of his opposition to age discrimination, the District took actions against him that would dissuade a reasonable worker from complaining, including giving him a negative evaluation; failing to select him for a promotion; giving him an unfavorable work schedule, and eventually terminating him.

111. The District terminated Mr. Velez almost immediately after the EEOC issued Mr. Velez his Notice of Right to Sue letter.

112. Requesting a Notice of Right to Sue letter is necessary in order to pursue litigation of an ADEAA claim and is therefore, protected activity.

113.    The retaliatory conduct by the District caused Mr. Velez significant damages that he is entitled to recover, including but not limited to lost wages, benefits, and reinstatement or front pay.

114.    Mr. Velez also suffered emotional distress, pain, and suffering due to the District's intentional discrimination; therefore he is entitled to compensatory damages in an amount to be proven at trial.

115.    The District acted with malice or reckless disregard of Ricardo's federally protected rights to work in an environment that is not pervaded with discrimination, therefore; the District is liable for punitive damages.

116.    Mr. Velez is also entitled to recover his attorneys' fees and other costs of this action.

**FOURTH CLAIM**
**Ethnic/National Origin Discrimination in Violation of Title VII, 42 U.S.C. §2000e (as to the District)**

117.    Plaintiff incorporates and realleges all paragraphs as though fully set forth herein.

118.    Mr. Velez is Puerto Rican, a protected class under Title VII.

119.    The District discriminated against Mr. Velez on the basis of his ethnicity/national origin when it promoted Bowels (a less qualified individual) rather than Ricardo for the position of Maintenance Lead.

120.    Bowels is white and not a member of Mr. Velez's protected class.

121.    The District subjected Mr. Velez to disparate treatment by terminating him for significantly less serious conduct when his non-hispanic coworkers were not disciplined for engaging in much more serious violations of District policy.

122.    The discriminatory conduct caused Mr. Velez damages that he is entitled to recover, including but not limited to lost wages, benefits, and reinstatement or front pay.

123.    Mr. Velez also suffered emotional distress, pain, and suffering due to the District's intentional conduct; therefore he is entitled to compensatory damages in an amount to be proven at trial.

124.    The District acted with malice or reckless disregard of Velez's federally protected rights to work in an environment that is not pervaded with discrimination, therefore; the District is liable for punitive damages.

125.    Mr. Velez is also entitled to recover his attorneys' fees and other costs of this action.

## FIFTH CLAIM
### Retaliation in Violation of Title VII, 42 U.S.C. § 2000e (as to the District)

126.    Plaintiff incorporates and realleges all paragraphs as though fully set forth herein.

127.    Mr. Velez engaged in protected activity by complaining internally about race discrimination; filing a Charge of Discrimination; and requesting and receiving a Notice of Right to Sue letter from the EEOC.

128.    The District retaliated against Mr. Velez for engaging in protected activity.

129.    The District retaliated against Mr. Velez by giving him a negative evaluation; failing to select him for a promotion; giving him an unfavorable work schedule, and eventually terminating him.

130.    The retaliatory actions would dissuade a reasonable employee from engaging in a protected activity.

131.    Mr. Velez has suffered and will continue to suffer economic and non-economic.

132.    Mr. Velez seeks all actual damages including lost wage and benefits (front and back pay), emotional distress damages, pre-and post-judgment interest, and attorneys' fees and costs.

## SIXTH CLAIM
### Discrimination in Violation of 42 U.S.C. § 1981

133. Plaintiff realleges and incorporates by reference all paragraphs set for above.

134. Mr. Velez is entitled to protected status under 42 U.S.C. § 1981 because he is Puerto Rican.

135. Mr. Velez was qualified for the promotion he applied for on or around January 4, 2023.

136. Despite his qualifications, the District instead hired Bowles, who had both less experience and less seniority than Mr. Velez.

137. Bowles is Anglo and therefore, not of the same protected class as Mr. Velez.

138. The District had the intent to discriminate on the basis of Mr. Velez's status as a Puerto Rican.

139. The District's discrimination is evinced by the District consistently promoting lesser qualified Anglos to leadership positions over Latinos/Hispanics/Puerto Ricans.

140. The District subjected Mr. Velez to disparate treatment by terminating him for significantly less serious conduct when his non-hispanic coworkers were not disciplined for engaging in much more serious violations of District policy.

141. Indeed, other non-hispanic/non-Puerto Rican employees who more clearly violated District Policy (like Neves) were not terminated.

142. Further, when the District learned that other non-hispanic employees had been using District resources, they were not fired. On information and belief, they were not even disciplined.

143. The District's conduct violates 42 U.S.C. § 1981.

144. As a result of the District's conduct, Mr. Velez suffered and will continue to suffer economic and non-economic damages.

145.    Mr. Velez seeks all actual damages including lost wages and benefits, emotional distress damages, pre- and post-judgment interest, attorneys' fees, and costs.

146.    The District's actions demonstrate malice or a reckless disregard for Mr. Velez's federal protected rights. Therefore, the District is also liable for punitive damages.

147.    Mr. Velez also seeks equitable relief, including reinstatement or front pay in lieu of reinstatement.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, requests that the Court enter judgment in his favor and against Defendant and award the following relief:

A.  Back and front pay, and any other pecuniary losses;

B.  Compensatory and consequential damages;

C.  Punitive damages, in substantial, appropriate, and reasonable amounts;

D.  Equitable relief, including reinstatement or front pay;

E.  Injunctive relief;

F.  Pre- and post-judgment interest at the highest lawful rate;

G.  Attorneys' fees and costs of this action, as appropriate; and

H.  Any such further relief as justice allows.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of all issues of fact and damages in this action triable of right by a jury.

DATED: April 8, 2024.

18

Respectfully submitted.


*/s/ Nicolas C. Wilde*


Nicolas C. Wilde (15768)
**Law Office of Nicolas C. Wilde LLC**
2564 Washington Blvd. Suite 202
Ogden, Utah 84401
801-949-3088
nick@ncwildelaw.com


April L. Hollingsworth (9391)
Katie Panzer (16919)
Whitney Nelson (19031)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: 801-415-9909
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com
whitney@aprilhollingsworthlaw.com