Mitch M. Longson #15661
Matthew D. Church #15574
Carson M. Fuller #17571
**MANNING CURTIS BRADSHAW**
**& BEDNAR PLLC**
201 South Main Street, Suite 750
Salt Lake City, Utah 84111
(801) 363-5678
mlongson@mc2b.com
mchurch@mc2b.com
cfuller@mc2b.com
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICARDO VELEZ,<br><br>    Plaintiff,<br><br>v.<br><br>METROPOLITAN WATER DISTRICT OF SALT LAKE & SANDY, a political subdivision,<br><br>    Defendant. | **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY AND MOTION TO REOPEN ANALEE MUNSEY'S AND SONYA SHEPHERD'S DEPOSITIONS**<br><br>Case No. 2:24-cv-00258-HCN-DAO<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

Defendant Metropolitan Water District of Salt Lake & Sandy ("Defendant" or the "District"), by and through the undersigned counsel, respectfully submits this Memorandum in Opposition to Plaintiff's Motion for Sanctions Under the Court's Inherent Authority and Motion to Reopen Analee Munsey's [sic] and Sonya Shepherd's Deposition (the "Motion").

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

RESPONSE TO "RELEVANT BACKGROUND" ........................................................... 3

ARGUMENT ..................................................................................................................... 11

    I.    Plaintiff Cannot Meet the Elements Necessary to Impose Spoliation Sanctions ............. 11

    a.    Plaintiff has not met the elements for spoliation sanctions ............................................ 13

      i.    The District did not have a duty to preserve handwritten notes. ............................ 13

      ii.    Plaintiff cannot demonstrate prejudice. .................................................................. 15

    b.    Plaintiff has not demonstrated any bad faith ................................................................. 19

    c.    Plaintiff's allegations of "discovery misconduct" are neither accurate nor evidence of "bad faith." ......................................................................................................................... 21

    II.    There Is No Basis to Award Fees in Connection with the Reopened Depositions, Nor for Any Other Alleged "Discovery Misconduct" Addressed in the Motion. ........................... 22

CONCLUSION ................................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**

*Alexce v. Shinseki*, 447 F. App'x 175 (Fed. Cir. 2011) ................................... 12

*Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997) ............................... 12

*Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013 (10th Cir. 2007) ....................... 11, 16

*Costobile-Fulginiti v. City of Philadelphia*, 719 F. Supp. 2d 521 (E.D. Penn. 2010) ................. 14

*Douglas v. Bd. of Trustees of Cloud Cnty. Comty. Coll.*, 2022 WL 4591750 (D. Kan. 2022) ....... 7

*Gordon v. EarthLink, Inc.*, 2017 WL 3203385 n.9 (D. Mass. July 27, 2017) ............................. 14

*Hamilton v. Mount Sinai Hospital*, 528 F. Supp. 2d 431 (S.D.N.Y. 2007) ................................. 12

*Henning v. Union Pac. R. Co.*, 530 F.3d 1206 (10th Cir. 2008)................................... 19, 20

*Huggins v. Prince George's Cnty., Md.*, 750 F. Supp. 2d 549 (D. Md. 2010)............................. 13

*Kosmidis v. Port Auth. of N.Y. and N.J.*, 2020 WL 5754605 (S.D.N.Y. Aug. 27, 2020) ............. 12

*Lichwick v. Verizon*, 2011 WL 4000991 (S.D.N.Y. Aug. 30, 2011) ............................................ 14

*Morris v. Union Pac. R.R.*, 373 F.3d 896 (8th Cir. 2004) ............................................ 19

*Montgomery v. Mattis*, WL 13331659, at *2 (E.D. Va. Mar. 25, 2019)........................................ 14

*Nichols-Villalpando v. Life Care Centers of Am., Inc.*, 2007 WL 1560307 (D. Kan. May 30, 2007)..................................................................................................................... 14

*Pro Mkt'g Sales, Inc. v. Secturion Sys., Inc.*, 2022 WL 20335556 (D. Utah Aug. 30, 2022) 12, 13

*Rivera v. Hudson Valley Hospitality Group, Inc.*, No. 17 Civ. 5636, 2019 WL 3955539 (S.D.N.Y. Aug. 22, 2019)....................................................................................................... 12

*Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553 (7th Cir. 2001)................................................. 14

*S.C. Johnson & Son v. Louisville & Nashville Railroad Co.*, 695 F.2d 253 (7th Cir. 1982)........ 12

*Sports Rehab Consulting LLC v. Vail Clinic, Inc.*, 2024 WL 1931750 (D. Colo. 2024)............... 7

*Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136 (10th Cir. 2009) ..................................... passim

**Rules**

Fed. R. Civ. P. 26(a)(1)(A)(ii) ..................................................................................................... 5

**Regulations**

29 C.F.R. § 1602.14................................................................................................................ 13, 14

**Other Authorities**

DUCivR 37-1 .......................................................................................................................... 5, 22

Handbk. Fed. Civ. Disc. & Disclosure § 16:3 (4th ed.)................................................................ 13

## INTRODUCTION

This case is about Plaintiff Ricardo Velez's allegation that the District terminated him because he reported misuse of District resources in January 2024, and otherwise discriminated against him based on his age and national origin. *See generally* Compl., ECF 1. The District denies these allegations for several reasons, but its core defense in this case will be that it terminated Plaintiff not because of Plaintiff's protected status or protected conduct, but because Plaintiff made multiple, documented false statements in the course of the District's investigation of his report about misuse of District resources, revealing Plaintiff's bad faith intent to implicate his coworkers. The District believes these facts have been and will continue to be borne out in this case. Plaintiff's Motion appears aimed at reversing the narrative, casting the District and its employees as dishonest conspirators who "sanitized," "manipulated," and "altered" documents in an effort to manufacture a basis to terminate Plaintiff. Mot. 6, 20. But to be clear at the outset, Plaintiff does not *actually* claim that anybody "sanitized," "manipulated," or "altered" documents. Rather, Plaintiff uses those inflammatory terms in a transparent effort to make his Motion into far more than it is.

Plaintiff's Motion is instead based on a single, simple allegation: that the District Manager, Annalee Munsey, spoliated evidence when she discarded handwritten investigation notes after transferring their substance into typewritten notes. During the investigation at issue, Ms. Munsey or District HR Manager Sonya Shepherd, or at times both, took handwritten notes they then worked together to type into a consolidated "timeline" document at the conclusion of the investigation. Ms. Munsey discarded her handwritten notes as a matter of course—her handwritten notes would be "very light," and thus, it was her practice to consolidate them into typewritten notes for completeness and ease of reference, then discard the handwritten notes. *See*

1

Munsey Dep., Ex. Q to Mot., at 12:8–22 ("I take very light notes and then I type them up, which usually includes more detail."). Ms. Shepherd similarly types up her handwritten notes "in a Word document to make [them] more clear and summarize the notes from the interviews." *See* Shepherd Dep., Ex. R to Mot., at 25:21–26:11. Ms. Shepherd does not discard her handwritten notes and is not aware of any handwritten notes she has discarded pertinent to this case. *Id.*

Plaintiff's counsel states that he "does not bring this Motion lightly." Mot. 13. Likewise, the District does not take Plaintiff's request for an "adverse inference" lightly, nor does it take the allegations against it lightly. The District rejects the notion that it has spoliated evidence, intentionally or otherwise, and vehemently disagrees with Plaintiff's allegations of "discovery misconduct" and "bad faith." There is zero evidence—none—that the District's witnesses, Ms. Munsey or Ms. Shepherd, discarded any notes with ill intent or in "bad faith." Ms. Munsey testified under oath and unequivocally that she discarded her notes in the ordinary course of business, believing that her typed notes contain all information that could be found in her discarded "light" notes. And Ms. Shepherd has produced her only handwritten notes and testified that she has not discarded any. Plaintiff's bare assertions that Ms. Munsey or Ms. Shepherd were somehow dishonest about their practices with their notes, or that there is a "discrepancy" between Ms. Shepherd's notes and the typewritten notes, are unsupported and are not evidence of "bad faith" destruction of evidence.

Plaintiff's allegation of general "discovery misconduct" is not only completely untethered from his spoliation allegations, but it is a revisionist history of what has been, to date, a cooperative discovery effort between counsel. Indeed, Plaintiff's laundry list of alleged "discovery misconduct" is nothing more than a summary of typical ***good faith*** efforts between counsel to resolve common discovery disputes about objections, the scope of requests, and the

completeness of productions. Those efforts have worked. Until this one, no party has filed a discovery motion with the Court. Where productions or interrogatory responses were deemed inadequate, they were ***in every instance*** supplemented on timelines dictated by Plaintiff's counsel following meet-and-confer discussions. Where written discovery objections were disputed, ***in every instance*** the parties engaged in respectful meet-and-confer discussions and, upon mutual agreement, supplements were made as agreed. And where any documents were produced after depositions, the District has affirmatively volunteered to reopen the depositions for Plaintiff's counsel to question the witnesses on newly produced material.

In short, in a case in which the parties have reached mutual agreement as to ***every discovery dispute*** that has arisen (save Plaintiff's sanctions claim), Plaintiff's allegations of "discovery misconduct" and "bad faith" fall flat. The District has not intentionally spoliated relevant evidence, and it has not engaged in any conduct warranting any sanction, let alone the severe sanction of an adverse inference. The District respectfully requests that the Court deny the Motion in its entirety.

## RESPONSE TO "RELEVANT BACKGROUND"

In his Relevant Background section, Plaintiff specifically cites six discovery requests to which he asserts the District provided "false" or "incomplete" responses. In doing so, Plaintiff omits the District's full and supplemental responses, the fact that the District has supplemented documents or information in virtually every instance requested by Plaintiff, the fact that several of the issues are moot because the District voluntarily agreed to reopen depositions and to pay court reporter and videographer costs,[1] and mischaracterizes the District's good faith efforts to meet Plaintiff's discovery demands as supposed "bad faith."

---

[1] *See* ECF 21.

3

The District sheds additional light on each cited request and the District's corresponding responses below, which demonstrate that, far from "discovery misconduct," the District has acted promptly and in good faith to respond to every discovery issue raised by Plaintiff.

**Interrogatory No. 6**. This Interrogatory asked the District to "identify the current age and ethnicity (including whether of Hispanic origin) for each individual listed in the District's 2024 organizational chart." ECF 18-13, at 9. The District's initial response stated the following:

> The District objects to this Interrogatory as calling for information not within its custody and control. The District is not required to ask for ethnicity information of its employees and does not track this information. For employee ages as of October 14, 2024, see the table below.
> [table of employee names and ages].

*Id.* This statement was accurate when made because the District does not ask for prospective employee ethnicity information as part of the hiring process, and it understood at the time that it did not possess ethnicity records. After providing this response and when the issue was explored in more depth following a meet and confer, the District reviewed its systems and realized that District employees can, but are not required to, provide their ethnicity within the District's HR portal. The District does not actively solicit or track that information, but employees can provide it on the HR portal after hire. Following a meet and confer on this response, the District promptly gathered all self-reported employee ethnicity information and supplemented its response to Interrogatory No. 6. These facts demonstrate the District's good faith efforts to respond to Plaintiff's counsel's meet and confer demands, and to supplement according to Rule 26(e).

The District went even further in accommodating Plaintiff's requests by sending out a survey to District employees who to that point had not self-reported their ethnicity, inviting them to self-report so that the District could supplement its response in even greater detail. The District was able to provide nearly 90% of its employees' ethnicities to Plaintiff through

4

voluntary means, and Plaintiff has not disputed the completeness or the accuracy of that information. The District's conduct related to Interrogatory No. 6 (and other requests cited by Plaintiff) was exactly what Rule 26(e) contemplates—supplementation when a party learns that a response is incomplete or incorrect. Plaintiff instead asks the Court to infer bad faith any time a response is supplemented or corrected. Such a position contradicts the realities of discovery, as expressly anticipated in the rules.[2]

**RFP No. 1**. In an unusual request, Plaintiff's Request for Production No. 1 asked the ***District*** to "produce and identify all documents identified in ***Plaintiff's*** . . . initial disclosures." (emphasis added). ECF 18-13, at 15. The District objected, but produced responsive documents and responded as follows:

> The District objects to this Request as improper for multiple reasons. As part of his initial disclosures, Plaintiff has the duty to provide documents "in [Plaintiff's] possession, custody, or control" that he "may use to support [his] claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii). Plaintiff listed approximately 44 documents in his initial disclosures, but noted that he believes they are in the District's possession, not his own possession. If the documents were not in his possession, he should not have listed them in his initial disclosures, because by rule those disclosures are limited to documents in his possession, custody, or control. If the documents were in his possession, custody, or control, he should have provided them himself. Plaintiff did neither of these things, so his August 16, 2024 initial document disclosure was inconsistent with applicable rules.
>
> Compounding the issue, Plaintiff now seeks to improperly combine requests for 44 distinct documents into a single request, far exceeding the limit of 30 requests for production established in the Scheduling Order. *See* ECF 14.
>
> Finally, it is suspect that Plaintiff apparently knows the exact dates of emails and titles of documents listed in his initial disclosures, but denies having access to them. The District objects to the request because it appears the documents may be

---

[2] Notably, the District is a relatively small organization with a correspondingly small HR and management staff. Two District employees (Ms. Munsey and Ms. Shepherd) were involved in responding to Plaintiff's steady barrage of discovery requests and demands for supplementation. Plaintiff's attacks on their character ignore the cooperative efforts these individuals have taken to respond to Plaintiff's demands, in addition to their full-time jobs at the District, and the routine process of meeting and conferring under DUCivR 37-1 and supplementing under Rule 26(e).

in Plaintiff's possession, custody, and control and that he is improperly shifting the costs of producing these materials and the associated burden of proving his case to the District.

Subject to and without waiving these objections, see responsive documents within the District's custody or control produced herewith. The District is not withholding any documents in its custody or control on the basis of its objections.

*Id.* at 15–16.

Even though Plaintiff already possessed the documents he sought through this request, the District nevertheless in good faith undertook the time and expense to gather the documents it believed were responsive and produce them.

The only issue raised by Plaintiff related to this request concerns certain *draft* documents that were later supplemented. But by Plaintiff's own admission, the District produced those draft documents—which it did not initially understand to be responsive to Request—within two weeks of Plaintiff's request for supplementation. *See* Motion, ECF 18, at 9 (acknowledging that the supplementation occurred on March 12, 2025, two weeks after Plaintiff's counsel's February 26, 2025 letter). There is no basis to claim the supplementation was "untimely" as Plaintiff asserts.

Again, if anything other than routine discovery back-and-forth about the scope of a request, this sequence evidences the District's ***good faith*** efforts to resolve perceived insufficiencies.

**RFP No. 7**. In Request for Production No. 7, Plaintiff sought "all communications— including emails, text messages, memos, letters, instant messages, etc.—concerning Mr. Velelz [sic] to or from any of the following people: Sonya Shepherd, Annalee Munsey, Mike DeVries, Board of Trustees members, Steve Slack, and Gordon Cook." ECF 18-13, at 17–18.

The District initially objected to the request as "overbroad as to time and subject matter as it contains no time restriction and no limitation on subject matter." *Id.* The parties met and

conferred on this issue and narrowed the scope of the request. The District then responded to the narrowed request as follows:

> Subject to and without waiving its prior objections, for both (a) and (b) above, see documents produced concurrently herewith. To the extent the request seeks communications on personal devices of board members or employees, the District objects because communications on personal devices of board members and employees, including texts, are not within the possession, custody, or control of the District. See *Douglas v. Bd. of Trustees of Cloud Cnty. Comty. Coll.*, 2022 WL 4591750, at *1 (D. Kan. 2022) ("The Court denied Plaintiffs' request that Defendant Board be required to search its board members' personal computers, devices, and email accounts in response to the disputed discovery requests, finding they are not in the Defendant Board's possession, custody or control."); see also *Sports Rehab Consulting LLC v. Vail Clinic, Inc.*, 2024 WL 1931750, at *3 (D. Colo. 2024) ("Courts within the Tenth Circuit confirm that companies do not have possession, custody, or control of the devices and text messages of their employees."). The District does not own or control employee or board member cell phones. The District has provided responsive communications from the requested employees' District email accounts, but consistent with its objection, is not providing text messages from personal devices. Communications on personal devices, to the extent discoverable, would need to be obtained via subpoena, and the District reserves all rights related to any such third-party discovery.

ECF 18-15, at 4. With this response, the District produced the vast majority of the requested "communications," but stood on its objections related to communications on personal devices—objections which are squarely supported by the cited Tenth Circuit law. Later, in the depositions, testimony indicated that the District gives a cell phone allowance to employees. But the question of whether a cell phone allowance gives the District (or Plaintiff) the legal right to access and search an employee's personal cell phone is far from settled law. Cases rule both ways on the issue, and the analysis appears to be highly fact-dependent. The same is true for work communications conducted on personal devices; the District was not able to locate law that clearly states that employers have the legal right to search employee personal devices simply because they may contain work-related communications, or that Plaintiff has the right to obtain said messages ***from the District*** in discovery.

Critically, the District never indicated that Plaintiff could not obtain the requested text messages. The District simply stated that a subpoena to the cell phone owners was the appropriate mechanism to obtain the messages because, in the District's view, the District could not compel an employee to turn over a personal device. Nevertheless, in a further demonstration of good faith and transparency, the District produced the requested messages.

Again, there is no prejudice to Plaintiff. The District has voluntarily offered to reopen depositions so that Plaintiff can question the witnesses about the messages. None of this demonstrates bad faith.

**RFP No. 11**. This request deals with handwritten notes, which are addressed at length in the Argument section below. The District has produced all responsive handwritten notes in its possession and has offered to reopen the depositions of Ms. Munsey and Ms. Shepherd for counsel to question them on notes produced after their depositions. This includes one set of notes Ms. Shepherd located only after further reviewing her notebooks in response to Plaintiff's recent Fourth Set of Discovery Requests, which seek to inspect Ms. Shepherd's notebooks. Ms. Shepherd located a handwritten summary of the arguments of Plaintiff's counsel during the Appeal Board hearing in this matter. While these notes at least arguably are not responsive to RFP No. 11, the District has produced them in a spirit of openness and given Plaintiff's assertions of bad faith.

**Interrogatory No. 11**. This interrogatory asks, in relevant part, for the District to "[d]escribe and identify (by specific date and time) each instance of Gordon Cook, Steve Slack, Mike Carter, Scot Collier, and Kylon Neves using District resources for their personal projects . . . ." ECF 18-8, at 17. The District initially responded as follows:

> The District objects to this Interrogatory for multiple reasons. The Interrogatory is vague as to the undefined term "personal projects" and the District does not know

what Plaintiff means by that term. The Interrogatory is also vague and overbroad as to time because there is no timeframe referenced, and some of the named employees have been employed by the District for many years. The Interrogatory also seeks information outside the District's possession, custody, and control with respect to employees who are no longer employed by the District. The Interrogatory has also been asked and answered as to Gordon Cook (see Interrogatory No. 3 and response thereto). The Interrogatory also seeks irrelevant information because the Complaint is limited to allegations regarding personal projects undertaken by Gordon Cook, and nothing is alleged about personal projects undertaken by other employees, or that Plaintiff ever complained about personal projects undertaken by other employees besides Cook. Moreover, Plaintiff was terminated for dishonest statements made during an investigation into his complaints, and the information requested in this Interrogatory will not tend to prove or disprove the veracity of those statements and is therefore irrelevant to Plaintiff's claims. The Interrogatory also improperly assumes facts, including that the District was aware of all instances where employees have used District resources for personal projects, and that the District made individual determinations regarding the propriety of every employee's supposed use of District resources for personal projects.

Based on these objections and the fact that the District has already responded as to Cook, the District will not provide further responsive information without meeting and conferring regarding the relevance of the remainder of this request.

*Id.* at 17-18. Counsel met and conferred, and the District supplemented its response as follows:

Subject to and without waiving its prior objections, as to Mr. Cook, the District does not know all the dates and times that Mr. Cook used District resources for personal projects. Mr. Cook does not remember specific dates and times. The District understands, based on its investigation into Mr. Velez's complaints, that Mr. Cook used the fab bay and welding table to alter the running boards for his truck on or around July 31, 2023, to fabricate a handrail for his home on or around September 27, 2023, and to fabricate a spare tire rack for his RZR on or around October 2, 2023. The District understands that Mr. Cook's use of District resources occurred on his own time. The District concluded that these uses did not rise to the level of a Policy violation when it conducted an investigation into Mr. Velez's December 19, 2023 comments related to his performance evaluation (see METRO000329), as described in the January 16, 2024 Interoffice Memorandum. *See* METRO000212. The District had not received prior complaints related to employees using District resources for personal projects. Further, the District understands that Mike DeVries, the General Manager who preceded Ms. Munsey, had previously provided additional verbal approval of de minimis use of District resources for personal projects so long as such uses were accomplished using the employee's own materials and on the employee's own time.

As to the other individuals identified in Interrogatory No. 11, the District rests on its objections. Mr. Velez never provided the District with any complaint or evidence of any personal projects undertaken by the employees referenced in this Interrogatory except for Mr. Cook. This is confirmed by the allegations in the Complaint, which discuss only actions by Mr. Carter and Mr. Neves that were taken in furtherance of Mr. Cook's personal projects, not their own. The District has responded as to Mr. Cook. Any unalleged personal projects of other employees are irrelevant to this case.

Moreover, even assuming Mr. Velez could establish that rampant unapproved use of District resources for personal projects occurred at the District (the District denies such use occurred)—such evidence would still be irrelevant and does not tend to demonstrate discrimination or retaliation, or somehow show pretext because Mr. Velez was not terminated for reporting a misuse of District resources; rather, he was terminated for lying during the course of an investigation. The dishonest statements from Mr. Velez were that (a) Mr. Cook told Mr. Burch that "everything needed to stop" (which Mr. Cook and Mr. Burch both denied) and (b) that Mr. Burch asked Mr. Velez why he (Mr. Burch) had been implicated in Mr. Velez's allegations and that he (Mr. Burch) feared losing his job (which Burch denied). *See* METRO000212-13. Evidence of supposed misuse of District resources beyond those identified in Mr. Velez's complaint to the District or in the Complaint in this matter does not tend to make either of those statements appear more or less true, and is therefore irrelevant to this case.

ECF 18-17, at 2–3. While it continues to believe that its objections were sound, the District agreed to supplement its response in a good faith effort to avoid the expense and delay of discovery motion practice. *See* ECF 18-19. Again, the District has continually produced documents and information, even in the face of sound objections, in an effort to be cooperative and transparent. The District maintains its objection that the information sought for employees against whom Plaintiff never filed any complaint related to the use of District resources for personal projects, and against whom no allegation is raised in the actual Complaint, is irrelevant. Nevertheless, Plaintiff has the information. There is no prejudice.

**Interrogatory No. 7**. The mere fact that Plaintiff includes this Interrogatory in its Motion should alert the Court to the lack of credibility inherent in the Motion's "discovery misconduct" allegations. The Interrogatory, in relevant part, asks the District to "[i]dentify all employees the

10

District has terminated since 2014 . . . ." ECF 18-13, at 11. The District responded with a list of employees that had been terminated prior to Nov. 4, 2024, the date the District provided its responses. Plaintiff concedes this response was accurate and complete when the initial responses were provided. *Id.* at 11–12; *see also* ECF 18, at 26. During her February 19, 2025, deposition, Ms. Munsey supplemented the response by verbally indicating that the District had terminated one additional employee in the interim, which Plaintiff acknowledges occurred ***after*** the initial discovery responses were provided. Not only did the District supplement its response through testimony, the District also promptly provided supplemental written information after the deposition related to the recently terminated employee. *See* ECF 18-19, at 2–3.[3] There is no evidence of any bad faith associated with the District's response to this request.

In sum, Plaintiff's laundry list of "discovery misconduct" is nothing more than a summary of cooperative, good faith efforts by the parties to resolve routine discovery disputes. The parties indeed *have* resolved those discovery disputes, in every instance. None of this is evidence of bad faith or "misconduct."

## ARGUMENT

### I.  Plaintiff Cannot Meet the Elements Necessary to Impose Spoliation Sanctions.

Spoliation sanctions are proper only when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir. 2007)). Further, "if the aggrieved party seeks an adverse inference to remedy the

---

[3] Again, it is a common occurrence for potentially relevant documents or information to come up during a deposition which have not been disclosed previously. The rules require supplementation and that is what the District did here.

11

spoliation, it must also prove bad faith. 'Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case.'" *Id.* (quoting *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1407 (10th Cir. 1997)).

Moreover, "even if [a party] had a duty to preserve [documents], spoliation sanctions are not necessarily warranted where a party has destroyed handwritten copies of notes later put into electronic form." *Kosmidis v. Port Auth. of N.Y. and N.J.*, 2020 WL 5754605, at *10 (S.D.N.Y. Aug. 27, 2020) (citing *Hamilton v. Mount Sinai Hospital*, 528 F. Supp. 2d 431, 444 (S.D.N.Y. 2007), *aff'd*, 331 F. App'x 874 (2d Cir. 2009); *Rivera v. Hudson Valley Hospitality Group, Inc.*, No. 17 Civ. 5636, 2019 WL 3955539, at *4 (S.D.N.Y. Aug. 22, 2019) ("mere transfer of information into a different medium, if accurate, will not support spoliation sanctions"); and *S.C. Johnson & Son v. Louisville & Nashville Railroad Co.*, 695 F.2d 253, 258–59 (7th Cir. 1982)). Rather, "'[t]here is no force to the argument that the destruction of duplicative materials constitutes spoliation of evidence.... The routine destruction of duplicative documents does not present the risk of denying an adversary access to relevant information, which is what the doctrine of spoliation is directed to.'" *Pro Mkt'g Sales, Inc. v. Securion Sys., Inc.*, 2022 WL 20335556, at *2 (D. Utah Aug. 30, 2022) (quoting *Alexce v. Shinseki*, 447 F. App'x 175, 178 (Fed. Cir. 2011)).

Plaintiff's spoliation allegations fail at every level of the analysis. First, there was no duty to preserve, and even assuming the District had a duty to preserve Ms. Munsey's handwritten notes, there is no evidence of prejudice to Plaintiff given the existence of duplicative materials. Second, there is no evidence that Ms. Munsey discarded her notes in "bad faith." Third, Plaintiff's allegations that the District has engaged in "discovery misconduct" are both inaccurate and immaterial to the spoliation question before the Court.

### a. Plaintiff has not met the elements for spoliation sanctions.

#### i. The District did not have a duty to preserve handwritten notes.

Plaintiff first argues that the District had a duty to preserve all documents pertaining to Plaintiff beginning in May 2023 after he filed a Charge of Discrimination and after Ms. Munsey interviewed Plaintiff about his district resources comments. Mot. 14–16. In making this argument, Plaintiff disregards two critical factors: (1) there was no reason to anticipate litigation regarding Plaintiff's statements about District resource use, which he raised for the first time not in a complaint, but in a performance review "comment"; and (2) Ms. Munsey preserved the substance of her notes by transcribing them into electronic form. And as to Ms. Shepherd, she did not discard any notes and has produced what notes she took.

"A party has a duty to preserve evidence when it knows or should know that litigation is imminent, or when litigation is pending or reasonably foreseeable." *Pro Mkt'g Sales, Inc.*, 2022 WL 20335556, at *2 (internal quotation marks omitted). This is a flexible, fact-specific standard that "allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." § 16:3. Handbk. Fed. Civ. Disc. & Disclosure § 16:3 (4th ed.). What is clear, however, is that a party is not "required to hold all possibly relevant records to all possible litigation if any litigation could possibly occur—an extreme position that extends foreseeability beyond reasonableness." *Huggins v. Prince George's Cnty., Md.*, 750 F. Supp. 2d 549, 561 (D. Md. 2010), *aff'd*, 683 F.3d 525 (4th Cir. 2012).

Plaintiff first argues that the District had a regulatory duty to preserve the notes as "personnel records" under 29 C.F.R. § 1602.14 and Utah R. Admin. P. 606-6-2(c). Both rules are inapposite. "[H]andwritten notes are frequently considered to fall outside the scope of Section 1602.14 as they are preliminary documents usually incorporated into more formal personnel

records." *Montgomery v. Mattis*, WL 13331659, at *2 (E.D. Va. Mar. 25, 2019) (citing *Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 558–59 (7th Cir. 2001) (stating that "[e]mployers are not required to keep every single piece of scrap paper ... [i]t is sufficient that the employer retains only the actual employment record itself, not the rough drafts or processes which may lead up to it.") and *Lichwick v. Verizon*, 2011 WL 4000991, at *5 (S.D.N.Y. Aug. 30, 2011) (rejecting request for adverse inference sanctions based on destruction of handwritten notes "transcribed … into an electronic file" alleged to be in violation of § 1602.14)); *Nichols-Villalpando v. Life Care Centers of Am., Inc.*, 2007 WL 1560307, at *3 (D. Kan. May 30, 2007) ("[T]he documents at issue in this case are handwritten interview notes that were incorporated into a report for Ms. Biehl's supervisor. Plaintiff provided no authority for her position that notes incorporated into a final report must be maintained under 29 C.F.R. § 1602.14. And the court has found none.").

Utah R. Admin. P. 606-6-2(c) similarly only requires employers to retain "personnel records" that would not include handwritten notes. There is no reason to believe Utah's retention rules expand beyond their federal counterpart. Indeed, Utah's rule and the federal regulation are nearly identical and use identical terms to describe the "personnel records" that must be retained. *Compare* 29 C.F.R. § 1602.14 *with* Utah R. Admin. P. 606-6-2(c); *see also Gordon v. EarthLink, Inc.*, 2017 WL 3203385, at *8 n.9 (D. Mass. July 27, 2017) (rejecting, in footnote, spoliation argument that destruction of handwritten interview notes later "typed up" must be preserved). Here, Ms. Munsey kept the typewritten notes into which her handwritten notes were "incorporated," which satisfies both state and federal law. *Costobile-Fulginiti v. City of Philadelphia*, 719 F. Supp. 2d 521, 529 (E.D. Penn. 2010) ("Plaintiff has not provided any evidence that Council's original handwritten notes or original documents were purposely altered or omitted when transferred from rough draft to final draft form.").

14

Plaintiff next argues that the District had a duty to preserve based on anticipated litigation because Ms. Munsey "confirmed that during her interview with Mr. Velez, she broached the topic Mr. Velez [sic] suing the District." Mot. 16 (citing Ex. Q at 155–157). Plaintiff tellingly does not provide the Court with his response to Ms. Munsey after she "broached" that topic. In her deposition, Ms. Munsey was asked whether she was "aware or suspected [Plaintiff] was considering suing the district" at the time. Ex. Q to Mot. at 156:10–17. Ms. Munsey responded, "***No. I did not know***," and when she asked Plaintiff about it, "***[Plaintiff] said he hadn't thought of it ….***" *Id.* (emphasis added). Thus, Plaintiff ***disclaimed*** an intent to sue the District at the time. How this supports an argument that Ms. Munsey should have reasonably anticipated litigation, Plaintiff does not explain. And moreover, this testimony explains Ms. Munsey's earlier testimony—on which Plaintiff repeatedly relies to cast Ms. Munsey as somehow dishonest—that she had not discarded any notes "after [she] w[as] put on notice that this case was headed for litigation." *Id.* at 12:23–1. Ms. Munsey had no reason to suspect litigation was forthcoming after Plaintiff told her he "hadn't thought" of suing the District, particularly regarding Plaintiff's latest statements regarding use of District resources—an issue he had not raised before, had filed no formal "complaint" about until asked by Ms. Munsey, and that bore no relevance to his May 2023 Charge.

Plaintiff fails to demonstrate a duty to preserve evidence pertaining to Ms. Munsey's interview, and even to the extent he establishes such a duty, Plaintiff's own cited authority does not extend to obligating Ms. Munsey to retain handwritten notes later typewritten.

### ii.   *Plaintiff cannot demonstrate prejudice.*

Even if a duty to preserve handwritten notes existed, Plaintiff cannot demonstrate prejudice. To demonstrate prejudice, Plaintiff must show "actual[], rather than merely

theoretical[]" prejudice. *Turner*, 563 F.3d at 1150 (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1033 (10th Cir. 2007)). Plaintiff asserts that the destruction of handwritten notes in this case "has caused significant and irreparable prejudice to Mr. Velez," Mot. 17, but identifies no meaningful, non-speculative evidence of such prejudice. Plaintiff's entire prejudice argument boils down to his allegation that because Ms. Shepherd's handwritten notes allegedly "directly contradict the typed notes," he is prejudiced because the lack of other notes deprives him of the "right to test the credibility and completeness of the District's typed summaries." *Id.*

As an initial matter, there exists no "significant discrepancy" between Ms. Shepherd's handwritten notes and the typewritten notes. Plaintiff's argument is based on a cursory summary of the two documents that Plaintiff again tellingly chooses not to quote. It is first important to note that Plaintiff was terminated for ***multiple misrepresentations***, both written and oral, each aimed at implicating his coworkers for the potentially serious offense of misusing District resources. Specifically, in the District's termination memorandum, Ms. Munsey identified the following misstatements that formed the basis of the termination decision:

- "You claimed that Mr. Cook had informed Mr. Burch that 'everything needed to stop.' Based on our investigation, we have concluded that no such statement was ever made. Indeed, nobody even knew that you had raised these concerns about Mr. Cook before the District conducted its investigatory interviews …." (Ex. A6 to Mot. at METRO000452–53.)

- "You also claim that Mr. Burch spoke with you and asked why [Burch] had been 'implicated' in your allegations, confiding that [Burch] feared losing his job. Again, we have concluded that you fabricated this statement and falsely attributed it to Mr. Burch. To be clear, Mr. Burch denies ever speaking with you about this issue beyond you mentioning your allegations to him in general terms. He did not ask you why he had been implicated because you did not tell him that you were implicating him. He also denied any fear for losing his job, especially given that he has 38 years of service with the District." (Ex. A6 to Mot. at METRO000453.)

Based on these misstatements, Ms. Munsey concluded that Plaintiff had "attempt[ed] to bolster a claim of manager misconduct by falsely attributing statements to a coworker," which is "unacceptable misconduct." *Id.*

Both the typewritten and handwritten notes support these findings. The typewritten notes confirm Burch's statements in the interview, including (1) that Cook had not spoken with Burch about these issues; (2) that Burch did not "approach[] [Plaintiff] and ask[] him why he implicated [Burch]"; and (3) that Burch did not state that he feared losing his job, noting that he has "worked here for 38 years." Ex. A5 to Mot. at METRO000373–74. Ms. Munsey and Ms. Shepherd confirmed these misstatements independently with Cook and Burch, *id.* at METRO000372–74, on which Plaintiff had doubled down during his interview, *see id.* at METRO000371.

Ms. Shepherd's handwritten notes likewise confirm Burch's statements that "[Cook] has never told [Burch] anything about [Plaintiff]," and that "[Burch] never said he's in fear of losing his job." Ex. A7 at METRO003107. The handwritten notes also say that "[Burch] may have said he was doing what he was told to do," *id.*, which is the statement Plaintiff contends "significant[ly]" departs from the typewritten notes. The typewritten notes state, in relevant part, "Annalee asked [Burch] *if he approached [Plaintiff] and asked him why he implicated him [Burch] if he was doing what he was asked to do*. Again [Burch] said he did not say these things. He doesn't know what [Plaintiff] is talking about." Ex. A5 at METRO000373 (emphasis added). Plaintiff's argument disregards the focus of the question as framed in the typewritten note, which is "*why [Plaintiff] implicated [Burch]* if he was doing what he was asked to do." Ex. A7 at METRO003107 (emphasis added). Ms. Shepherd's note that Burch told her he "may have said he was doing what he was told to do" is not the subject of the question. Indeed, the

District never accused Plaintiff of lying about whether Burch said he "was doing what he was asked to do"; beyond quoting that language in Plaintiff's letter as background, that statement is nowhere to be found in the Termination Memorandum. *See generally* Ex. A6 to Mot. Rather, the District found that Plaintiff misrepresented that Burch asked Plaintiff "***why he had been 'implicated*,'**" that Burch claimed "fear of losing his job," and that Cook stated "everything needed to stop." Ex. A6 to Mot. at METRO000452–53 (emphasis added). These are the statements Plaintiff fabricated, and these are the statements that constitute each of the factual bases for termination set forth in Plaintiff's Termination Memorandum. *See id.* There is no inconsistency in any of the documents.

Plaintiff's misinterpretation of the documents is not evidence of prejudice in any sense. To the extent Plaintiff's counsel disagrees with the above interpretation of the typewritten or handwritten notes, or the Termination Memorandum, again, his counsel is entitled to question Ms. Shepherd or Ms. Munsey under oath—and to question Mr. Burch and others, if Plaintiff chooses—about the information in each document. Indeed, Plaintiff disregards the host of evidence available to him concerning the interviews and their substance—implying, instead, that the handwritten notes are the only means by which he can "test the credibility and completeness of the District's typed summaries." Mot. 17; *see Turner*, 563 F.3d at 1150 (affirming rejection of sanctions based on destruction of interview notes where plaintiff "had access to a significant amount of evidence regarding the interview process and her performance during the 2004 interview"). The District has produced the typewritten notes, the handwritten notes it possesses, and contemporaneous email and text message correspondence concerning the investigation and interviews. Plaintiff's counsel has already questioned Ms. Munsey and Ms. Shepherd extensively

regarding the interviews and the typed notes.[4] *See Turner*, 563 F.3d at 1150 (affirming rejection of sanctions where employer "made [witness] available for a deposition by [plaintiff's] counsel, during which [the witness] answered extensive questions regarding the interview process and his decision not to hire [plaintiff]."). And the District has voluntarily agreed to reopen both witnesses' depositions for further questioning regarding Ms. Shepherd's handwritten notes and other documents produced after meet and confer discussions that followed their depositions. ECF 21.

In short, Plaintiff's assertion that he has suffered "significant and irreparable prejudice" cannot be squared with the evidentiary record, which he does not discuss and apparently hopes the Court will disregard. Beyond the alleged "discrepancy," Plaintiff provides no other basis for supposed prejudice. Thus, Plaintiff fails to establish the elements of spoliation.

### b.  Plaintiff has not demonstrated any bad faith.

Because Plaintiff has not demonstrated spoliation, the Court need not reach Plaintiff's argument that he is entitled to an adverse inference because destruction of handwritten notes was done in "bad faith." If the Court does reach the bad faith question, it should reject Plaintiff's bad faith arguments on their face. "An adverse inference is a powerful sanction as it 'brands one party as a bad actor' and 'necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in the unknown contents of [spoliated evidence].'" *Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1219–20 (10th Cir. 2008) (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 900–01 (8th Cir. 2004)). Thus, "if the aggrieved party seeks an adverse inference to remedy the spoliation, it must

---

[4] Notably, during his deposition, Plaintiff, too, was questioned extensively about his interview with Ms. Munsey and Ms. Shepherd and testified that their typewritten summary of his interview was both accurate and complete. *See* Velez Dep., attached hereto as Exhibit 1, at 219:12–227:14.

also prove bad faith," *Turner*, 563 F.3d at 1149, or "intentional destruction," *Henning*, 530 F.3d at 1220. "Without a showing of bad faith, a district court may only impose lesser sanctions." *Turner*, 563 F.3d at 1149.

Plaintiff presents four arguments that the District's destruction of handwritten notes was in "bad faith." None comes close to meeting the standard. First, Plaintiff argues that the District "falsely claimed" in its discovery responses that it had "already produced all documents" responsive to RFP No. 11, even though Ms. Munsey and Ms. Shepherd "were aware that they had taken handwritten notes responsive to RFP No. 11." Mot. 19. As is now well established, Ms. Munsey does not have any of her handwritten notes because she compiled them into typed format. Thus, the District produced what it had from Ms. Munsey. As for Ms. Shepherd, she testified in her deposition that she did not consider that the handwritten notes should be produced "[b]ecause all of [her] notes were summarized" in a Word document, "and that was what I considered to be the notes from the meetings." Ex. R to Mot. at 135:3–9. Following the deposition, and now understanding the handwritten notes to be responsive, Ms. Shepherd produced them and the District has agreed to reopen her deposition for purposes of addressing them. *See* ECF 21. Again, it is hard to conceive of how this sequence reflects "bad faith," or "intentional" destruction of documents, when Ms. Shepherd retained and produced the handwritten notes she took.

Second, Plaintiff makes the duplicative argument that "Ms. Shepherd's admission that she ignored a discovery request—despite possessing responsive documents—is itself evidence of bad faith." Mot. 20. Ms. Shepherd did not "ignore a discovery request." She quite reasonably misunderstood the scope of the request, testified truthfully about the issue in deposition, and rectified her misunderstanding by producing her notes and offering additional deposition time.

The fact that the District has ***produced the relevant documents*** after a reasonable misunderstanding regarding the scope of a discovery request serves only to underscore the District's ***good faith*** in addressing this issue.

Third, Plaintiff accuses Ms. Munsey of being dishonest because she testified that she had not discarded notes "after [she was] put on notice that this case was headed for litigation." Mot. 20. As already addressed above, this testimony was truthful. Not only did Ms. Munsey have no regulatory obligation to retain her handwritten notes, Ms. Munsey also had no reason to suspect litigation was forthcoming because Plaintiff told her he "hadn't thought of" suing the District when asked at the time. Ex. Q to Mot. at 156:10–17. Plaintiff's insistence on using this testimony as evidence of alleged bad faith without providing the Court with Plaintiff's response ***disclaiming*** an intent to sue is a material and concerning omission. Ms. Munsey testified truthfully and her conduct exhibits nothing remotely close to bad faith.

Finally, Plaintiff argues that the same "discrepancy" between Ms. Shepherd's notes and the typed notes addressed above "suggests" a "willingness to manipulate the content of contemporaneous records." Mot. 20. Here again, Plaintiff employs strong accusatory language that finds no support in the evidence. The District did not "sanitize" or "manipulate" any documents. *Id.* at 6, 20. Nor did it "selectively edit" any documents, nor are there any "discrepancies." *Id.* at 20. Plaintiff's liberal use of damning language should not be confused for actual evidence. The Court should not reach these "bad faith" arguments, but if it does, they should be rejected as inadequate at best and misleading at worst.

### c. Plaintiff's allegations of "discovery misconduct" are neither accurate nor evidence of "bad faith."

As detailed in the "Response to Relevant Background" above, the Court should give no credence to Plaintiff's list of alleged "discovery misconduct." Those allegations have nothing to

do with the spoliation allegations at issue in the Motion and, instead, merely constitute inaccurate mudslinging over routine discovery disputes—all of which the parties have resolved without Court involvement.

## II. There Is No Basis to Award Fees in Connection with the Reopened Depositions, Nor for Any Other Alleged "Discovery Misconduct" Addressed in the Motion.

In addition to an adverse inference, Plaintiff also seeks fees and costs for reopening Ms. Munsey's and Ms. Shepherd's depositions. Notably, Plaintiff's counsel had not requested a reopened deposition, or otherwise met and conferred about that issue, prior to filing his Motion. As the Court is now aware, the District has agreed to reopen Ms. Munsey's and Ms. Shepherd's depositions, for up to four hours each, and to cover reporter and videographer costs. ECF 21. The District affirmatively offered to reopen the depositions when it became aware of Plaintiff's desire to reopen the depositions by virtue of the Motion. Thus, there is no issue for the Court to decide regarding the reopened depositions.

Plaintiff's requests for fees "to prepare for and participate in the reopened depositions" and "for his counsel having to meet and confer to prove the falsity of the District's repeated misrepresentations about discovery throughout this case" are unfounded. As explained *supra*, no discovery issue has come before the Court in this case until now. Plaintiff's Motion is one for spoliation sanctions, which he supports, in part, with a one-sided narrative about the District's "discovery misconduct." That inaccurate narrative is false and irrelevant to the sanctions Plaintiff seeks, but as a matter of legal authority, the undersigned counsel is unaware of any rule, caselaw, or other law standing for the proposition that one is entitled to "fees and costs" for "***having to meet and confer***" about discovery issues. Of course, the rules require meet-and-confer efforts when disputes arise. DUCivR 37-1(a)(1). That has occurred in this case in every instance, with

one exception: Plaintiff chose not to meet and confer regarding reopening depositions, which the District has affirmatively offered to resolve without Court involvement.

There is no basis for Plaintiff's requests for attorney fees or costs and the request should be denied for each category listed in the Motion.

## **CONCLUSION**

For the foregoing reasons, the Motion should be denied in its entirety. There has been no spoliation. Plaintiff has not suffered prejudice. The District has cooperated with Plaintiff in discovery in good faith and there is no evidence of bad faith.


Dated May 12, 2025.

> **MANNING CURTIS BRADSHAW**
> **& BEDNAR PLLC**
>
> /s/ Mitch M. Longson
> MITCH M. LONGSON
> MATTHEW D. CHURCH
> CARSON M. FULLER
> *Attorneys for Defendant*

## WORD LIMIT CERTIFICATION

I, Mitch M. Longson, certify that **Defendant's Memorandum in Opposition to Plaintiff's Motion for Sanctions Under the Court's Inherent Authority and Motion to Reopen Analee Munsey's and Sonya Shepherd's Depositions** contains 7,586 words and complies with the Court's word limitation provided in ECF 17.

**MANNING CURTIS BRADSHAW & BEDNAR PLLC**

/s/ Mitch M. Longson
MITCH M. LONGSON
MATTHEW D. CHURCH
CARSON M. FULLER
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on May 12, 2025, a copy of the foregoing was electronically filed with the

Clerk of the Court using the E-File system, which sent notification of this filing to the following:

April L. Hollingsworth
Kate Panzer
Whitney Nelson
HOLLINGSWORTH LAW OFFICES, LLC
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com
whitney@aprilhollingsworthlaw.com

Nicolas C. Wilde
Law Office of Nicolas C. Wilde LLC
nick@ncwildelaw.com

*Attorneys for Plaintiff*

/s/ DiAnn Calacino