UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| RICARDO VELEZ,<br><br>        Plaintiff,<br><br>v.<br><br>METROPOLITAN WATER DISTRICT OF SALT LAKE & SANDY, a political subdivision,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SPOLIATION SANCTIONS (DOC. NO. 18) AND MOTION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE (DOC. NO. 27)**<br><br>Case No. 2:24-cv-00258<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

In this wrongful termination suit, Ricardo Velez moves for sanctions against the Metropolitan Water District of Salt Lake and Sandy for spoliation of evidence.[1] Claiming the destruction of handwritten notes and an alleged "pattern of discovery misconduct," he seeks an adverse inference, an order reopening depositions for two District employees (Analee Munsey and Sonya Shepherd), and attorney's fees.[2] The District opposes, arguing Mr. Velez has not shown a duty to preserve, prejudice, or bad faith.[3]

Because Mr. Velez fails to establish Ms. Shepherd spoliated evidence, or that Ms. Munsey's discarded handwritten notes prejudiced him, the motion for spoliation

---

[1] (Mot. for Sanctions (Mot.), Doc. No. 18.)

[2] (*Id.* at 2, 19, 22–23.)

[3] (Def.'s Opp'n to Mot. (Opp'n), Doc. No. 22.)

sanctions is denied.  Mr. Velez's motion for leave to file supplemental evidence[4] is denied also, where the new evidence pertains only to bad faith and the District's duty to preserve—neither of which form the basis for this decision.

## BACKGROUND

The District terminated Mr. Velez after he reported that Gordon Cook, the District's Assistant General Manager and Chief Operating Officer, had misused District resources.[5]  Specifically, in early January 2024, Mr. Velez presented a letter to Analee Munsey, the District's General Manager, and Sonya Shepherd, the District's Human Resources Manager, alleging Mr. Cook made coworkers help him with personal projects.[6]  In the letter, Mr. Velez said:

> According to one of my coworkers [Blake Burch], Cook told him that everything needed to stop because "[Mr. Velez] wrote another letter telling Annalee everything we do and he implicated you," so [Mr. Burch] approached me and asked me why I implicated him if he only did what he was told to do[.][7]

Between January 8 and 10, 2024 (three months before this suit was filed), Ms. Munsey and Ms. Shepherd interviewed Mr. Velez, Mr. Cook, Mr. Burch, and three other District employees.[8]  In her typed notes of Mr. Burch's interview, Ms. Shepherd states:

---

[4] (Mot. for Leave to File Suppl. Evid. Related to Mot. (Suppl. Evid. Mot.), Doc. No. 27.)

[5] (Compl. ¶ 62, Doc. No. 1.)

[6] (*Id.*; Ex. A4 to Mot., Doc. No. 18-1.)

[7] (Ex. A4 to Mot., Doc. No. 18-1 at 2.)  Where the exhibits to the motion for sanctions do not include a uniform page numbering, this order refers to the CM/ECF pagination.

[8] (Ex. A5 to Mot., Doc. No. 18-2 at 4–7.)

"[Ms. Munsey] asked [Mr. Burch] if he approached [Mr. Velez] and asked him why he implicated him [Mr. Burch] if he was doing what he was asked to do. Again, [Mr. Burch] said he did not say these things."[9]

When Mr. Velez served the District with discovery requests in this case, he requested (among other things) handwritten notes of the six interviews Ms. Munsey and Ms. Shepherd conducted in January 2024.[10] The District responded that it had "already produced all documents within its possession" and was "unaware of any additional responsive documents."[11]

In later depositions, Ms. Munsey and Ms. Shepherd were asked about handwritten notes. Ms. Munsey testified her practice was to take "very light [handwritten] notes" during employee interviews and discard them after "typ[ing] them up."[12] She maintained that after being put "on notice that this case was headed for litigation," she did not discard any notes.[13] Ms. Shepherd testified her practice during employee interviews was to "handwrite some notes," which she usually kept in a notebook, and then to "write [them] up in a Word document to make it more clear and summarize the notes from the interview."[14] She acknowledged she "probably" had

---

[9] (*Id.* at 5.)

[10] (Ex. B to Mot., Pl.'s 2d Set of Disc. Reqs. 6–7, Doc. No. 18-7.)

[11] (Ex. C to Mot., Def.'s Resps. to Pl.'s 2d Set of Disc. Reqs. 13, Doc. No. 18-8.)

[12] (Ex. Q to Mot., Munsey Dep. Tr. 12:10–22, Doc. No. 18-20.)

[13] (*Id.* at 12:23–13:1.)

[14] (Ex. R to Mot., Shepherd Dep. Tr. 25:21–26:4, Doc. No. 18-21.)

"some handwritten notes about some of the meetings" in January 2024 but she would "have to double-check."[15] She confirmed she received a copy of Mr. Velez's discovery requests but said, because her notes were summarized, she did not look for her handwritten notes or look through her notebooks.[16]

After the depositions, counsel conferred regarding searching for and producing Ms. Munsey's and Ms. Shepherd's handwritten notes, if any, from the January 2024 employee interviews.[17] The following month, the District produced Ms. Shepherd's handwritten notes from the interview with Ms. Munsey and Mr. Burch.[18] In the notes, among other things, Ms. Shepherd wrote: "not true that [Mr. Cook] has asked others to help w[ith] personal things" and "[Mr. Burch] may have said he was doing what he was told to do."[19] The District produced no other handwritten notes from the employee interviews.[20]

Before the close of fact discovery, Mr. Velez moved for sanctions in the form of an adverse inference, an order reopening Ms. Munsey's and Ms. Shepherd's depositions, and attorney's fees.[21] He argues that, with the exception of Ms.

---

[15] (*Id.* at 168:10–14.)

[16] (*Id.* at 135:3–13, 206:14.)

[17] (Ex. H to Mot., Doc. No. 18-11.)

[18] (Ex. A7 to Mot., Doc. No. 18-4.)

[19] (*Id.* at 2.)

[20] (Mot. 6, Doc. No. 18.)

[21] (*Id.* at 18–23.)

Shepherd's notes from Mr. Burch's interview, the District spoliated evidence by destroying or failing to preserve Ms. Munsey's and Ms. Shepherd's handwritten notes from the employee interviews and generally engaged in misconduct throughout discovery.[22] In response, the District contends it had no duty to preserve those notes, Mr. Velez suffered no prejudice, there is no evidence of bad faith, and Mr. Velez's allegations that the District engaged in discovery misconduct is inaccurate and immaterial to determining spoliation.[23]

Mr. Velez then moved for leave to file supplemental evidence related to his motion.[24] He explains that, after he filed his motion for spoliation sanctions, his counsel "physically inspected notebooks from which some handwritten notes produced in this case derived," the District produced "a privilege log concerning the notebooks," and the parties reopened Ms. Munsey's and Ms. Shepherd's depositions.[25] He argues good cause exists to file this supplemental evidence because it relates to "the issues of (a) whether the District had a duty to preserve the handwritten notes and (b) whether the District acted in bad faith."[26]

---

[22] (*Id.* at 13–22.)

[23] (Opp'n 11–23, Doc. No. 22.)

[24] (Suppl. Evid. Mot., Doc. No. 27.)

[25] (*Id.* at 2.)

[26] (*Id.* at 3.)

## LEGAL STANDARDS

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[27] "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."[28] Further, where "the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith. 'Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case.'"[29] The moving party has the burden to establish each element of spoliation by a preponderance of the evidence.[30]

## ANALYSIS

As an initial matter, the "pattern of discovery abuses" Mr. Velez alleges is not at issue here.[31] If Mr. Velez believed the District violated discovery rules, he could have

---

[27] *Philips Elecs. N. Am. Corp. v. BC Technical*, 773 F. Supp. 2d 1149, 1194–95 (D. Utah 2011) (citation modified).

[28] *Burlington N. & Santa Fe Ry. v. Grant,* 505 F.3d 1013, 1032 (10th Cir. 2007).

[29] *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997)).

[30] *See Town & Country Bank, Inc. v. State Auto Prop & Cas. Ins. Co.*, No. 2:12-cv-957, 2014 U.S. Dist. LEXIS 17882, at *4 (D. Utah Feb. 6, 2014) (unpublished).

[31] (*See* Mot. 12–13, Doc. No. 18 (complaining of withholding critical evidence, failing to timely supplement, and spoliation, among other things).)

6

and should have challenged those violations, as they occurred.[32] When parties raise challenges in a timely fashion, the court can guide their actions after benefitting from a full adversarial exploration of the issues. Remedies can be ordered. And offending parties can defend their conduct or correct course. But when grievances are catalogued without being raised, the court has no ability to mitigate or resolve problems on an ongoing basis.

Setting this aside, Mr. Velez has not justified spoliation sanctions. Although the District had a duty to preserve the handwritten notes, Mr. Velez fails to show Ms. Shepherd spoliated evidence (that she destroyed or altered evidence or violated her preservation duty) or that he suffered prejudice from Ms. Munsey's discarding of her handwritten notes. The newly obtained evidence is not necessary to consider because it does not affect these two determinative issues.

A. <u>Duty to Preserve</u>

The District had a duty to preserve the handwritten notes. A duty to preserve evidence arises when a party knows or should know litigation is imminent.[33] Once a party has a duty to preserve, the duty "continues throughout the litigation, and a party cannot continue its routine procedure of destroying relevant evidence."[34]

---

[32] (*See id.* at 21–22 (alleging specific discovery violations from as far back as February 2024 in support of his bad faith argument).)

[33] *See Burlington*, 505 F.3d at 1032.

[34] *Andalam v. Trizetto Grp., Inc.*, No. 12-cv-01679, 2013 U.S. Dist. LEXIS 164970, at *7 (D. Colo. Nov. 19, 2013) (unpublished).

Mr. Velez contends the District had a duty to preserve the handwritten notes in January 2024, because: (1) Utah's Antidiscrimination and Labor Division (UALD) instructed the District in May 2023 to preserve materials related to a "Charge of Discrimination" Mr. Velez filed with the EEOC against the District;[35] (2) federal regulation 29 C.F.R. § 1602.14 obligated the District to preserve records having to do with termination;[36] and (3) Ms. Munsey "broached the topic" of Mr. Velez suing the District during his interview.[37] In response, the District contends Mr. Velez fails to show a duty to preserve because his statements about District resource use (raised for the first time in a performance appraisal) "bore no relevance to his May 2023 Charge," the regulations he cites do not cover handwritten notes, and Mr. Velez disclaimed an intent to sue after Ms. Munsey broached the subject.[38]

The record does not support the District's contention that Mr. Velez disclaimed an intent to sue after Ms. Munsey broached the subject. Ms. Munsey testified only that, at the time she began her investigation, Mr. Velez stated he had not considered a lawsuit.[39] And while the regulations Mr. Velez cites generally do not obligate retaining

---

[35] (Mot. 14–15, Doc. No. 18 (quoting Ex. A9 to Mot., Doc. No. 18-6 (UALD letter stating Utah R. Admin. P. 606-6-2(c) "requires that you [the District] preserve all personnel records relevant to the complaint and to the Charging Party until the case is over")).)

[36] (*Id.* at 15–16 (quoting 29 C.F.R. § 1602.14).)

[37] (*Id.* at 16 (citing Ex. Q to Mot., Munsey Dep. Tr. 155–157, Doc. No. 18-20).)

[38] (Opp'n 13–15, Doc. No. 22.)

[39] (*See* Ex. Q to Mot., Munsey Dep. Tr. 157:9–19, Doc. No. 18-20.)

handwritten notes,[40] the District had an independent duty to preserve them because it should have known litigation was imminent. Mr. Velez filed a discrimination charge with the EEOC in May 2023, about seven months before he raised the resource use issue. And Ms. Munsey and Ms. Shepherd knew he was working with an attorney in January 2024, at the time of the resource use issue.[41] In view of this sequence of events, the District does not explain how the resource use issue is so distinct from the discrimination and wrongful termination claims as to negate its duty to preserve. Because Mr. Velez had filed an EEOC charge and had an attorney as of January 2024, the District should have known litigation was imminent. Accordingly, it had a duty to preserve Ms. Munsey's and Ms. Shepherd's handwritten notes from the employee interviews.[42]

---

[40] *See*, *e.g.*, *Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 558–59 (7th Cir. 2001) (discussing 29 C.F.R. § 1602.14 and explaining "[e]mployers are not required to keep every single piece of scrap paper that various employees may create during the termination process," retaining "only the actual employment record itself, not the rough drafts or processes which may lead up to it," is enough); *Lichwick v. Verizon*, No. 08 CIV. 3892, 2011 U.S. Dist. LEXIS 97552, at *15 (S.D.N.Y. Aug. 25, 2011) (unpublished) (rejecting adverse inference for destroyed interview notes, explaining "courts have held that notes that are incorporated into a final report are not personnel records subject to EEOC's recordkeeping regulations," namely, § 1602.14).

[41] (Ex. A5 to Mot., Doc. No. 18-2 at 2 (summarizing early January 2024 emails in which Mr. Velez informed Ms. Munsey that he needed to confer with his legal adviser).)

[42] *See Fox v. Steepwater LLC*, No. 2:16-cv-796, 2018 U.S. Dist. LEXIS 80917, at *26–27 (D. Utah May 14, 2018) (unpublished) (finding "the filing of an EEOC charge coupled with the assistance of an attorney at that time created a duty to preserve the notebook" at issue); *Hamilton v. Ogden Weber Tech. Coll.*, No. 1:16-cv-00048, 2017 U.S. Dist. LEXIS 192963, at *6 (D. Utah Nov. 21, 2017) (unpublished) (finding that the defendant had a duty to preserve evidence when it received notice of plaintiff's EEOC charge); *Garcia v. City of Farmington*, No. Civ. 12-383, 2016 U.S. Dist. LEXIS 184238,

That said, Mr. Velez only provides evidence that Ms. Munsey discarded handwritten notes from the interviews. There is insufficient evidence to find the same for Ms. Shepherd. Ms. Shepherd testified she would "typically handwrite some notes" in employee interviews, which she would "usually keep" in a notebook then transfer to a Word document.[43] She acknowledged she "probably" had "some handwritten notes about some of the meetings" in January 2024, but said she would "have to double-check."[44] After she checked, she produced her notebooks and the notes from Mr. Burch's interview.[45] There is no evidence Ms. Shepherd took or discarded any other notes. Accordingly, although Ms. Shepherd had a duty to preserve handwritten notes at

---

at *5 (D.N.M. July 5, 2016) (unpublished) (finding the first prong for spoliation had been met where recordings were made after the plaintiff filed her EEOC charge); *McCargo v. Texas Roadhouse, Inc.*, No. 09-cv-02889, 2011 U.S. Dist. LEXIS 49320, at *8 (D. Colo. May 2, 2011) (unpublished) (noting the well-established principle that a party has a duty to preserve evidence when a party "reasonably anticipates litigation") *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("While a litigant is under no duty to keep or retain every document in its possession, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request."(citation modified)).

[43] (Ex. R to Mot., Shepherd Dep. Tr. 25:21–26:4, 87:23–25, Doc. No. 18-21.)

[44] (*Id.* at 168:10–14.)

[45] (Ex. A7 to Mot., Doc. No. 18-4 (handwritten notes from January 9, 2024, meeting with Mr. Burch and Ms. Munsey); Suppl. Evid. Mot. 2, Doc. No. 27 (representing that Mr. Velez's counsel "physically inspected notebooks from which some handwritten notes produced in this case derived").) Mr. Velez does not contend the notebook inspection or reopened depositions produced new evidence relevant to whether she violated her duty to preserve or whether he suffered prejudice. (*See* Suppl. Evid. Mot. 3, Doc. No. 27 (explaining "the evidence is relevant to the issues of (a) whether the District had a duty to preserve the handwritten notes and (b) whether the District acted in bad faith").)

that time, Mr. Velez fails to demonstrate she violated this duty or spoliated evidence. For this reason, the motion for spoliation sanctions is denied as to Ms. Shepherd, and the issues of prejudice and bad faith are moot as to her notes.

B. <u>Prejudice</u>

As for Ms. Munsey's discarded handwritten notes, Mr. Velez has not shown he suffered prejudice. For spoliation sanctions, there must be evidence of actual prejudice.[46] "It is not enough for a party seeking spoliation sanctions . . . to raise an issue of theoretical prejudice—that prejudice cannot be known because the documents and information no longer exist."[47] Instead, the moving party carries the burden "to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause."[48]

Mr. Velez argues Ms. Munsey's discarded handwritten notes cause "irreparable prejudice" by depriving "him of critical impeachment material and the ability to confirm or challenge the veracity" of the typed summaries.[49] Specifically, he contends Ms.

---

[46] *See Burlington*, 505 F.3d at 1032–33 (affirming denial of spoliation sanctions where "meaningful evidence" of "actual, rather than merely theoretical prejudice," was absent (citation modified)); *Linnebur v. United Tel. Ass'n, Inc.*, No. 10-1379, 2012 U.S. Dist. LEXIS 85821, at *9 (D. Kan. Jun. 21, 2012) (unpublished) ("[A] "party seeking spoliation sanctions must present evidence that it was actually prejudiced.").

[47] *Linnebur*, 2012 U.S. Dist. LEXIS 85821, at *9.

[48] *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 167 F.R.D. 90, 104 (D. Colo. 1996).

[49] (Mot. 17–18, Doc. No. 18 (quoting *Herman v. City of N.Y.*, 334 F.R.D. 377, 389 (E.D.N.Y. 2020) and arguing that "requiring a plaintiff to prove the precise contents of

Shepherd's late-produced handwritten notes contradict her typed notes, which "raises serious questions about what further relevant or favorable information may have been lost when the District discarded and/or concealed Ms. Munsey's and Ms. Shepherd's handwritten notes."[50]

In response, the District contends Mr. Velez has identified no meaningful, nonspeculative evidence of prejudice.[51] According to the District, no evidence of prejudice exists for Ms. Munsey's discarded handwritten notes, because she compiled those notes into a typed format before discarding them, and the District produced the typed notes.[52] In effect, the District explains, Mr. Velez's position is that, because Ms. Shepherd's handwritten notes allegedly contradict her typed notes, Mr. Velez is prejudiced by not seeing the other handwritten notes.[53] But the District argues there is no "significant discrepancy" between Ms. Shepherd's handwritten and typed notes—Mr. Velez merely misinterprets the documents.[54]

---

lost documents 'sets too high a bar for sanctions, particularly when' the opposing party's 'preservation and production practices [are] facially deficient'").)

[50] (*Id.* at 17.) As noted above, there is no evidence the District discarded any handwritten notes by Ms. Shepherd.

[51] (Opp'n 16, Doc. No. 22.)

[52] (*Id.* at 1–2, 20.) The District also contends there is no evidence of prejudice regarding Ms. Shepherd's notes, because the District produced what it has and reopened depositions. (*Id.* at 18–19.) As explained above, where there is no evidence Ms. Shepherd discarded handwritten notes, the issue of prejudice is moot as to her.

[53] (*Id.* at 16.)

[54] (*Id.* at 18.)

Mr. Velez fails to provide evidence of actual prejudice. He does not show a reasonable possibility the discarded notes would have been favorable to his cause. Ms. Munsey testified she discards her handwritten notes from employee interviews only after she types them up.[55] Although Mr. Velez speculates that Ms. Munsey's handwritten notes were altered when typed,[56] he offers no evidence supporting this theory.[57] And Ms. Munsey testified she took steps to ensure her notes were complete and accurate, and included all important details.[58] Further, the parties reopened Ms. Munsey's deposition, meaning Mr. Velez has now had a second opportunity to depose

---

[55] (Ex. Q to Mot., Munsey Dep. Tr. 12:10–22, Doc. No. 18-20.)

[56] Mr. Velez bases his speculation on his interpretation of Ms. Shepherd's handwritten notes as contradicting her typed notes. But on their face, they are not contradictory. In her handwritten notes, Ms. Shepherd wrote that Mr. Burch "may have said he was doing what he was told to do." (Ex. A7 to Mot. 2, Doc. No. 18-4.) In her typed notes, Ms. Shepherd wrote that Mr. Burch denied asking Mr. Velez "why [Mr. Velez] implicated [Mr. Burch] if he was doing what he was asked to do." (Ex. A5 to Mot. 5, Doc. No. 18-2.) This does not support Mr. Velez's speculation of alteration.

[57] *Cf. Gordon v. EarthLink, Inc.*, No. 14-14145, 2017 U.S. Dist. LEXIS 117847, at *22 n.9 (D. Mass. July 27, 2017) (unpublished) (rejecting spoliation argument because the information contained in discarded handwritten notes was typed and included in the summaries); *Costobile-Fulginiti v. City of Philadelphia*, 719 F. Supp. 2d 521, 529 (E.D. Penn. 2010) (finding a practice of discarding handwritten documents after the information was typed did not warrant spoliation sanctions, where the plaintiff provided no evidence the handwritten notes "were purposely altered or omitted when transferred from rough draft to final draft form"). Mr. Velez's reliance on *Herman* is misplaced. In *Herman*, the court explained the handwritten notes were not destroyed in the ordinary course of business and there was no evidence the notes were transcribed into the computer record. *See* 334 F.R.D. at 389. The opposite is true here.

[58] (Ex. Q to Mot., Munsey Dep. Tr. 13:2–21 ("Q: Was it your practice to intentionally leave out important details from your notes? A: No. . . . That would not be a thing I would do.").)

her on the matter.[59]  Because Mr. Velez fails to demonstrate prejudice, the motion for spoliation sanctions is denied and the issue of bad faith is moot as to Ms. Munsey's notes.

C. <u>Motion to File Supplemental Evidence</u>

Finally, Mr. Velez's motion for leave to file supplemental evidence is denied. After full briefing on the motion for spoliation sanctions, Mr. Velez's counsel "physically inspected notebooks from which some handwritten notes produced in this case derived," the District produced "a privilege log concerning the notebooks," and the parties reopened Ms. Munsey's and Ms. Shepherd's depositions.[60]  Mr. Velez argues good cause exists to file supplemental evidence because it relates to "the issues of (a) whether the District had a duty to preserve the handwritten notes and (b) whether the District acted in bad faith."[61]

As explained above, however, the District did have a duty to preserve the handwritten notes and the issue of bad faith is moot where Mr. Velez has not shown he suffered prejudice from any spoliation.  Supplemental evidence related to preservation and bad faith would not change the ruling as to the lack of prejudice.  Accordingly, the supplemental evidence is not necessary or helpful to this determination, and the motion for leave to file it is denied.

---

[59] (Suppl. Evid. Mot. 2, Doc. No. 27.)  Mr. Velez does not indicate that Ms. Munsey's second deposition produced any evidence relevant to the issue of prejudice.  (*Id.* at 3.)

[60] (*Id.* at 2.)

[61] (*Id.* at 3.)

D. Attorneys' Fees

Finally, Mr. Velez seeks attorneys' fees for time spent preparing for and participating in the reopened depositions, for having to bring the spoliation motion, and for having to meet and confer with opposing counsel "about discovery throughout this case."[62] However, Mr. Velez cites no specific authority in support of his fee request. Instead, he generally contends the court has the inherent power to impose sanctions for spoliation, including in the form of attorneys' fees.[63]

As explained above, Mr. Velez has not justified any spoliation sanctions. For this reason alone, his request for fees as a sanction is denied. Moreover, fees for time spent conferring with opposing counsel, particularly when local rules require such conferences,[64] are unwarranted. And the conferences yielded results: the District agreed to reopen Ms. Munsey's and Ms. Shepherd's depositions and to cover reporter and videographer costs. In addition, even if his position were fully justified, where this is Mr. Velez's first discovery motion, the District had no previous chance to defend its conduct or correct course, making an award of fees unjust. Mr. Velez's request for attorneys' fees is denied.

---

[62] (Mot. 22–23, Doc. No. 18.)

[63] (*Id.* at 18–19.)

[64] *See* DUCivR 37-1(a).

## CONCLUSION

Because Mr. Velez fails to show Ms. Shepherd spoliated evidence or that Ms. Munsey's spoliation caused actual prejudice, his motion for spoliation sanctions[65] is denied. And because the newly obtained evidence would not affect this finding, the motion for leave to file supplemental evidence[66] is also denied.

DATED this 23rd day of October, 2025.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[65] (Doc. No. 18.)

[66] (Doc. No. 27.)